IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                          Case Nos.:      4:09cr9/MCR/CAS
                                             4:14cv512/MCR/CAS

JAMES GIBSON,
        Defendant.

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended Motion to
Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.
(ECF No. 356).   The Government has filed a response (ECF No. 368) and
Defendant filed a reply.   (ECF No. 377).   The case was referred to the
undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.   See
N.D. Fla. Loc. R. 72.2; see also 28 U.S.C. § 636(b) and Fed. R. Civ. P.
72(b).   After a careful review of the record and the arguments presented, it
is the opinion of the undersigned that, with the exception of the correction
of a clerical error, Defendant has not raised any issue requiring an
evidentiary hearing and that the § 2255 motion should be denied.   *See*
Rules Governing Section 2255 Cases 8(a) and (b).

BACKGROUND

Defendant James Gibson and three others were charged in a superseding indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than 50 grams of cocaine base.   (ECF No. 7).   Defendant was also charged along with two of his co-defendants with a substantive count of possession with intent to distribute more than five hundred grams of cocaine on a date certain.   Defendant proceeded to trial represented by Barbara Sanders, Esq.   He was convicted after a six day jury trial and sentenced to a term of life imprisonment.   (ECF Nos. 213, 250, 266-267, 294-300).   His conviction and sentence were affirmed on appeal.   (*United States v. Gibson,* 708 F.3d 1256 (11th Cir. 2013); ECF No. 341).

Defendant timely filed the instant motion to vacate, represented by retained counsel Michael Ufferman, raising six grounds for relief.   The Government concedes that the written judgment contains an error that should be corrected but otherwise opposes the motion.

ANALYSIS

General Legal Standards

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir.

2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).   To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v.*

*Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a

highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even

stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less

harsh due to a reduction in the defendant's offense level.   *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue

is a trial or sentencing issue.    *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);    *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection

procedures where such a motion has never been sustained because such a motion would not have been successful).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the

standard is framed, under the prevailing case law it is abundantly clear that

a moving defendant has a high hurdle to overcome to establish a violation

of his constitutional rights based on his attorney's performance.    A

defendant's belief that a certain course of action that counsel failed to take

might have helped his case does not direct a finding that counsel was

*constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and

records conclusively show that the prisoner is entitled to no relief."    *See* 28

U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518

F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective

assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d

at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).

To be entitled to a hearing, a defendant must allege facts that, if true, would

prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d

1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims,

conclusory allegations unsupported by specifics, or contentions that are

wholly unsupported by the record.    *See Winthrop–Redin v. United States*,

767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need

not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon

unsupported generalizations") (internal quotation marks omitted); *Peoples*

*v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

<u>Defendant's Individual Claims</u>

<u>Ground One</u>

Defendant first claims that the sentence for Count Two which is

contained in the written judgment conflicts with the sentence orally imposed

at sentencing.   Defendant is correct.   At sentencing, the court imposed a

term of life imprisonment as to Count One and 360 months as to Count

Two.   (ECF No. 300 at 33).   The written judgment of conviction, however,

reflects a life sentence as to each count.   (ECF No. 266 at 2).   The

Government has indicated that it does not oppose the correction of this

previously unnoticed clerical error in accordance with Rule 36 of the

Federal Rules of Criminal Procedure.   See *United States v. Portillo*, 363

F.3d 1161, 1164-65 (11th Cir. 2004).

Ground Two

In his second ground for relief, Defendant claims to have obtained newly discovered evidence that his conviction and sentence were procured in reliance upon false and perjurious testimony of numerous Government witnesses.   Defendant asserts, without any evidentiary support, that five of the Government's cooperating witnesses, Gary Sheppard, Daniel Durden, Mario Larry, Chaddrick Quinn and Carlos Peace, "have admitted that substantial portions of their testimony were fabricated, particularly the drug quantities."   (ECF No. 356 at 2).   The same individuals allegedly confirmed that the witnesses who were housed together met and shared information following their debriefings with Government agents and "would then coordinate the fabrication of testimony based on the Government's perceived need for evidence."   (*Id.*).   This claim is identical to the claim raised by Defendant's co-defendant and brother Leondray Gibson in his § 2255 motion.   (*See* ECF No. 350 at 17).

In its response, the Government references the response it filed to Leondray Gibson's § 2255 motion.   The Government also notes that AUSA Simpson discussed this claim with Defendant James Gibson's counsel, Mr. Ufferman.   Mr. Ufferman advised that he was relying on Leondray

Case Nos.: 4:09cr9/MCR/CAS; 4:14cv512/MCR/CAS

Gibson's attorney, Mr. Kent, and that he had no personal knowledge of evidence supporting this claim.   (ECF No. 368 at 2-3).   In Defendant's reply memorandum, counsel concedes that he is "not aware of any newly discovered evidence in the Defendant's case."   (ECF No. 377 at 1).   This corresponds to the reply filed by co-defendant Leondray Gibson in which his attorney admitted that his limited independent investigation was unable to confirm the factual assertions made in the initial pleading, and that an interview with one of the five named witnesses did not support the claim. (ECF No. 376 at 9).

Absent even any evidence to support Defendant's claim, it must be denied.

Ground Three

Defendant's third claim is that his sentence on Count One violates his Sixth Amendment right to a jury trial.   He claims that the district court could not impose a minimum mandatory sentence of life imprisonment based on the finding that Defendant had been convicted of two or more felony drug offenses when the finding about his prior convictions was not made beyond a reasonable doubt by a jury.

Defendant's argument is squarely foreclosed by *United States v. Harris*, 741 F. 3d 1245 (11th Cir. 2014), which held that judicial factfinding regarding prior convictions does not violate a Defendant's Sixth Amendment right to a jury trial.   *Harris*, 741 F.3d at 1249 (*citing Almendarez-Torres v. United States*, 523 U.S. 224, 226-227 (1998)).   This is because a prior conviction is not an "element" of a crime that must be found by a jury.   *Almendarez-Torres*, 523 U.S. at 226-227.   The court in *Harris* noted that the Supreme Court has explicitly stated that prior convictions are excepted from the general rule that a jury must find any fact that will increase the penalty for an offense.   *Harris*, 741 F.3d at 1249 (*citing Alleyne* 133 S. Ct. 2151, 2160 n.1).   Defendant is not entitled to relief.

Ground Four

Defendant next asserts that the Government presented perjured or inconsistent testimony to the grand jury or the trial jury.   He notes that during the grand jury proceedings, DEA Agent Greg Millard stated that he received information from an "informant" regarding a trip Defendant was scheduled to take to South Florida to pick up drugs.   Defendant contrasts

that testimony with his trial testimony that Millard did not have any

informants that were in contact with Defendant.

Defendant Gibson was not the target of the March 3, 2009, grand jury

proceedings he now cites.   (ECF No. 385 at 21).   At these proceedings,

Agent Millard testified about the investigation and mentioned the use of

informants.   The following testimony took place:

Q:   Let's talk about this.   On February 19 of 2009 was James
Gibson operating this Chevrolet Avalanche?

A: I believe it was Wednesday the 18th he left.   We got information
he was leaving Tallahassee.   I was able to catch up to him on the
Parkway, right when he was turning on 59, the first Jefferson County exit
out there.

(ECF No. 385 at 7).

Agent Millard also stated the following in response to questioning by

one of the grand jurors:

Q:   When the vehicle left you thought Gibson was in it?

A:   I believe Mr. Gibson was in it when it left.

Q:   You think he might have done the drug transaction.   Is there a
chance that Burton didn't know the drugs were in the car at the time?

A:   Sure.   There is a chance.   There is a chance but our informant
told us that –

(ECF No. 385 at 22).

Case Nos.: 4:09cr9/MCR/CAS; 4:14cv512/MCR/CAS

At trial, the following exchange took place on cross-examination:

Q:    You drew a conclusion, right?

A:    That Mr. Burton was working for Mr. James Gibson, yes, ma'am.

Q:    And despite that conclusion, you still did nothing to try to get an undercover buy from Mr. James Gibson, right?

A:    We would have loved to.   We did not –

Q:    Did you try?

A:    We didn't have any informants that could do it.

Q:    And you didn't try to do any tape recording or phone tapping or any other evidence to back up your theory, correct?

A:    Trust me, if we could have had an undercover buy, if we could have cultivated one – they don't grow on trees – or if we could have got the probable cause to get a wiretap, I would have loved to have done it, yes, ma'am.

Q:    In your opinion, it wasn't even probable cause, was it?

A:    I didn't have the informants to do it with.

(ECF No. 299 at 1512-1513).

Defendant now contends that "contrary to Agent Millard's testimony before the grand jury, the Government did not have an active informant working in/on this case."   (ECF No. 357 at 14).   The problem with this

contention is that Defendant offers only a partial citation of the relevant

portions of the transcript.

In response to the Government's question as to whether there was a

chance that Burton didn't know the drugs were in the car at the time, Agent

Millard's full response was:

> A: Sure. There is a change. There is a chance but our informant
> told us that – Mr. Bryant, Alvin Bryant, and Robert Sherrell Glanton had
> informed us that Mr. Burton would be the one that drives to Ocala to pick-
> up the drugs.

(ECF No. 385 at 7). Bryant and Glanton were individuals in custody who

had provided information to law enforcement, not "informants" who were at

liberty to conduct undercover drug buys.

Furthermore, in response to a question posed by one of the grand

jurors, Agent Millard clarified the source of his "information" that Defendant

was leaving Tallahassee to be a satellite tracking device. (ECF No. 385 at

23).

Agent Millard's testimony was not that he had not informants, but

rather that he had no informants who could make controlled buys from the

Defendant. The incarcerated witnesses who testified against Defendant

were not able to do so. The Government notes that ideally, the agent

would make the source of each bit of information precisely clear, the record suggests neither incorrect nor false information.    The undersigned concurs, and Defendant is not entitled to relief.

Ground Five

With respect to the allegations in Ground Four, Defendant submits that if the Government used an informant in this case, the Government's failure to disclose this informant constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).    As noted above, a reasonable interpretation of the record is that Millard used the word "informant" to refer to the incarcerated witnesses who were not, of course, available to conduct controlled buys from James Gibson.    Millard did not lie at trial, and Defendant has not shown a *Brady* violation.

Ground Six

Defendant's final ground for relief is that counsel was constitutionally ineffective because she did not establish that Defendant was the "*de facto*" owner of the Chevrolet Avalanche to which the GPS tracking device was affixed.    Before trial, co-defendant Kelvin Burton moved to suppress all evidence obtained as a result of the tracking device, which he

characterized as a warrantless search.   (ECF No. 107).[1]   Defendant

moved for permission to attend the scheduled hearing, conceding that he

did not have standing to object to the Fourth Amendment violation but

noting that the evidence seized would be used against him.   (ECF No. 99).

The district court denied both of Burton's motions after a hearing, which

Defendant attended.   (ECF No. 113, 136).   Subsequently, Defendant

Gibson filed a Motion to Adopt Motion to Suppress and Motion for

Reconsideration.   (ECF No. 143).   He argued therein that the testimony

adduced at the hearing established that the tracking device was

established while he had possession of the vehicle, and that he sometimes

drove it, although he also drove other vehicles.   The court denied the

motion.   (ECF No. 173).

Defendant challenged the denial of the motion to suppress on appeal.

He argued that installation of the device was a warrantless search and that

he had standing to challenge the search because of his "subjective and

---

[1] The initial motion was to suppress evidence seized due to an illegal arrest.   (ECF No. 93).   Burton's second motion addressed the warrantless placement of the tracking device.   It was not until after Defendant's trial that the United States Supreme Court overturned Eleventh Circuit precedent in holding that the installation of an electronic tracking device on a vehicle is a search which generally requires a warrant.   *United States v. Jones*, 132 S. Ct. 945, 949 (2012).

Case Nos.: 4:09cr9/MCR/CAS; 4:14cv512/MCR/CAS

objective expectation of privacy in the Avalanche."   *Gibson*, 708 F.3d at

1276.   The Eleventh Circuit noted that he was not the owner of the

Avalanche although he paid for its insurance and maintenance and often

drove it.   *Id.* at 1277.   The court also noted that an individual who borrows

a vehicle with the owner's consent has a legitimate expectation of privacy

in the vehicle and standing to challenge its search while it is in his

possession.   *Id.* (*citing United States v. Miller*, 821 F. 2d 546, 548 & n.2

(11th Cir. 1987)).   It concluded that Defendant Gibson had standing to

challenge the installation and use of the tracking device while the vehicle

was in his possession, but he did not have standing to challenge the use of

the tracking device to locate the Avalanche when it was moving on public

roads and he was neither the driver nor a passenger.   *Gibson*, 708 F.3d at

1277.   In sum, because he had no possessory interest in the vehicle at the

time of its seizure, he did not have standing to challenge the search and

seizure.   *Id.*

Defendant now claims that counsel should have presented his

testimony, as well as testimony from Kelvin Burton, that Defendant was the

"de facto" owner of the Avalanche and that he and he alone had a

possessory interest in the vehicle at all times.   The Eleventh Circuit noted

that Defendant was not the owner of the vehicle under Florida law.

*Gibson*, 708 F.3d at 1277.   Section 322.01(31), Florida Statutes defines

the "owner" of a vehicle as the person who holds the legal title to a vehicle.

Defendant himself said at sentencing that the vehicle did not belong to him.

(ECF No. 300 at 27).   Defendant has not explained what evidence counsel

could or should have presented beyond what was already before the court

and how this would have changed the ruling on standing.

     Defendant offers no new arguments and nothing to rebut the

Government's position in his reply.   His bare, conclusory allegations do not

establish that his attorney's performance was constitutionally ineffective

under *Strickland* or that he is entitled to relief.

Conclusion

     For all of the foregoing reasons, the court finds that Defendant has

failed to show that any of the claims raised in his motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor

has he shown that an evidentiary hearing is warranted.   Therefore

Defendant's motion should be denied in its entirety.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The judgment of conviction (ECF No. 266) be amended to reflect

that Defendant's sentence as to Count Two should be 360 months, and in all

other respects the motion to vacate, set aside, or correct sentence (ECF No.

356) should be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 12th day of June, 2017.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. _See_ 11th Cir. Rule 3-1; 28 U.S.C. § 636.**